Filed 5/5/22

CERTIFIED FOR PUBLICATION

IN THE APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF FRESNO

| | |
|---|---|
| FRESNO COUNTY PUBLIC GUARDIAN, | Sup. Ct. Appeal No. 3008 |
| Petitioner, | Sup. Ct. Case Nos. M21910568, M21910574 and M21910116 |
| v. | |
| | OPINION |
| THE SUPERIOR COURT OF FRESNO COUNTY, | |
| Respondent; | |
| | |
| RODOLFO LUNA et al., | |
| Real Parties in Interest. | |

Petition for writ of mandate from an order of the Superior Court of Fresno County, Hilary A. Chittick, Judge. Affirmed.[1]

---

[1] This opinion was originally issued by the court on May 5, 2022. It was certified for publication on May 5, 2022, which is within the time that the appellate division retained jurisdiction. This opinion has been certified for publication in the Official Reports. It is being sent to the Fifth District Court of Appeal to assist the Court of Appeal in deciding whether to order the case transferred

**Attorneys and Law Firms**

Libby Hellwig Teague, Fresno County Counsel, appearing on behalf of petitioner Fresno County Public Guardian's Office.

Nathan Lambert, Senior Deputy District Attorney, appearing on behalf of real party in interest Fresno District Attorney's Office.

Rebekah Tychsen, Deputy Public Defender, appearing on behalf of real party in interest Rodolfo Luna.

**Opinion**

F. Brian Alvarez, J.

# I.

## BACKGROUND

This writ petition arises out of three misdemeanor cases in which real party in interest, Rodolfo Luna, is charged with elder abuse, resisting arrest, and indecent exposure. When doubts arose about Luna's competence to stand trial, the trial court suspended criminal proceedings. The trial court ordered Luna to be evaluated by a psychologist for mental competency pursuant to Penal Code section 1368.[2] Luna's cases were then calendared in the mental health treatment court. In her report dated January 16, 2022, Tamar Kenworthy, Psy.D., opined Luna was incompetent to stand trial.

On January 21, 2022, the mental health treatment court found that Luna was incompetent and not suitable for diversion under section 1001.36, subdivision (b)(1)(D). The treatment court referred the matter to petitioner for an LPS conservatorship based on the opinion of Amanda Rosen, a utilization review specialist for

---

to the court on the court's own motion under the California Rules of Court, rules 8-1000 – 8.1018.

[2] Further undesignated references to sections are to the Penal Code.

-2-

the Fresno County Department of Behavioral Health, who is a licensed marriage and family therapist (LMFT).

Petitioner Fresno County Public Guardian objected to the treatment court's reliance on an LMFT's opinion about Luna's grave disability. Ultimately, the treatment court noticed a hearing on the issue of whether Rosen was qualified to render an opinion on whether Luna was suffering a grave disability under section 1370.01.

At the hearing on February 25, 2022, petitioner argued that an LMFT was not "a qualified mental health expert" for the purpose of section 1370.01 referrals. The treatment court ruled that an LMFT is "a qualified mental health expert" for the purpose of section 1370.01, reasoning that an LMFT can place a Welfare and Institutions Code section 5150 hold.

Petitioner then filed the instant writ petition. Petitioner argues that the court erred in determining that an LMFT is a qualified mental health expert for the purposes of making a determination under section 1370.01 that a person is gravely disabled for a referral for an LPS investigation. Petitioner seeks an order staying the court's order in this case, and ordering the court to obtain the opinion of a qualified mental health expert.

We entered an order notifying the parties that we were considering issuing a peremptory writ of mandate in the first instance (see *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 180), and calendared the matter for further proceedings. We granted petitioner's request for a stay of the trial court's referral order, pending the outcome of a hearing on the merits. The Fresno County District Attorney, as a real party in interest, filed

-3-

an informal response opposing any writ relief, arguing an LMFT is indeed a "qualified mental health expert" under section 1370.01.

## II.

### DISCUSSION

Because this writ involves review of the phrase "a qualified mental health expert" as used in newly-amended section 1370.01, we apply the *de novo* review standard. (*Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 724.) Here, "[o]ur task is to discern the Legislature's intent. The statutory language itself is the most reliable indicator, so we start with the statute's words, assigning them their usual ordinary meanings, and construe them in context. If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs. On the other hand, if the language allows more than one reasonable construction, we may look to such aids as the legislative history of the measure and maxims of statutory construction. In cases of uncertain meaning, we may also consider the consequences of a particular interpretation, including its impact on public policy." (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1190.)

Section 1370.01 is one of a series of statutes that establish procedures after a criminal defendant is found mentally incompetent. The statute only applies when the defendant is charged with one or more misdemeanors, or a violation of misdemeanor probation, and the trial court finds reason to believe that the defendant may be incompetent as a result of a mental health disorder. The statute was amended effective January 1, 2022, by Senate Bill 317 (2021-2022 Reg. Sess.), in part to eliminate referrals of incompetent

-4-

misdemeanor defendants to custodial treatment. Applicable here, the new statute changed how referrals to the conservatorship investigator are initiated.[3]

Section 1370.01, subdivision (1)(D)(iii), now provides, in relevant part, that if the court finds the defendant ineligible for mental health diversion the court may "hold a hearing" to determine whether to "refer the defendant to the county conservatorship investigator . . . for possible conservatorship proceedings for the defendant" pursuant to Welfare and Institutions Code section 5350, *et seq*. But, "[a] defendant shall only be referred to the conservatorship investigator if, *based on the opinion of a qualified mental health expert*, the defendant appears to be gravely disabled," as defined in Welfare and Institutions Code section 5008. (Italic added.) The phrase "qualified mental health expert" is not defined by section 1370.01, or anywhere else in the Penal Code.

Petitioner takes the position that Rosen, an LMFT, is not a "qualified mental health expert" because LMFTs cannot determine whether a person is "gravely disabled" for the purposes of imposing a Lanterman-Petris-Short (LPS) Act conservatorship under the Welfare and Institutions Code. According to petitioner, Welfare and Institutions Code sections 5352 and 5352.5 provide that only a professional person in charge of an agency providing comprehensive evaluation or of a facility providing intensive treatment can recommend that a LPS Act conservatorship be established. (Welf. &

---

[3] Prior to January 1, 2022, the court could "order the conservatorship investigator" to "initiate conservatorship proceedings" "if it appears to the court that the defendant is gravely disabled, as defined in subparagraph (A) of paragraph (1) of subdivision (h) of Section 5008 of the Welfare and Institutions Code." (Pen Code § 1370.01, subd. (c)(2), Stats. 2021, c. 143 (A.B.133), § 344, eff. July 27, 2021.)

-5-

Inst. Code, § 5352 ["The professional person in charge of an agency ..., or the professional person in charge of ... a county jail, or his or her designee, may recommend conservatorship for a person ..., if ... the professional person or another professional person designated by him or her has examined and evaluated the person and determined that he or she is gravely disabled ..."]; Welf. & Inst. Code, § 5352.5, sub.(a) ["Conservatorship proceedings may be initiated ... upon recommendation of the medical director of the state hospital, or a designee, or professional person in charge of the local mental health facility, or a designee, or the local mental health director, or a designee, to the conservatorship investigator ..."].)

Petitioner also cites, title 9 of the California Code of Regulations, section 822, which provides "[a]s used in the Act, 'professional person in charge of a facility' means a person as defined in Section 623, 624, 625, 626, or 627 of this Chapter who is designated by the governing board of the facility or other agency or person having control of the facility as the professional person clinically in charge of the facility for purposes of the Act." (Cal. Code Regs., tit. 9, § 822.) Sections 623 through 627 of the California Code of Regulations define a "professional person" as (1) a psychiatrist, (2) a psychologist, (3) a clinical social worker, (4) a marriage, family and child counselor, or (5) a nurse licensed as a registered nurse with a master's degree in psychiatric or public health nursing.

Pointing to Business and Professions Code sections 4980.36 and 4980.02, the district attorney counters an LMFT is authorized to render an opinion on grave disability pursuant to section 1370.01

-6-

because the Business and Professions Code requires an LMFT to receive education on the diagnoses and prognoses of mental disorders, on assessing and testing individuals, and on planning evidence-based treatments. Further, according to the district attorney, section 626, of title 9, of the California Code of Regulations considers LMFTs "professional persons" for purposes of rendering an opinion on grave disability. Thus, the district attorney concludes the trial court properly relied on Rosen's opinion for making a recommendation about Luna's grave disability.

We believe we only need to look to the plain language of the statute as the most reliable indicator of Legislative intent. (*Wells v. One2One Learning Foundation, supra,* 39 Cal.4th at p. 1190.) In our view, the phrase "qualified mental health expert" is unambiguous. "A person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates." (Evid. Code, § 720, subd. (a).) Moreover, the phrase "qualified mental health expert" has been used in section 1001.36 since its enactment in 2018. That section provides that mental health diversion is proper where the court "is satisfied that the defendant suffers from a mental disorder" as evidenced by "a recent diagnosis by a qualified mental health expert." (Pen. Code § 1001.36, subd. (b)(1)(A).) "In opining that a defendant suffers from a qualifying disorder, the qualified mental health expert may rely on an examination of the defendant, the defendant's medical records, arrest reports, or any other relevant evidence." (*Ibid.*)

The phrase "qualified mental health expert" has been judicially construed in case law concerning the determination of competency. In this context "[a] qualified mental health expert is someone, like a psychiatrist or psychologist, who is trained and experienced in diagnosing and treating mental health conditions." (*People v. Hines* (2020) 58 Cal.App.5th 583, 608 [addressing qualifications of expert to opine a defendant is incompetent to stand trial pursuant to § 1368].) "Where a statute is framed in language of an earlier enactment on the same or an analogous subject, and that enactment has been judicially construed, the Legislature is presumed to have adopted that construction." (*People v. Harrison* (1989) 48 Cal.3d 321, 329.) Thus, in using identical words to delineate who may opine about the initiation of a court-referred LPS conservatorship investigation, we presume the Legislature intended to convey the same meaning as within the context of mental health diversion. Rosen, an LMFT and utilization review specialist with the Fresno County Department of Behavioral Health, is an expert trained and experienced in diagnosing and treating mental health conditions. (Evid. Code, § 720, subd. (a); *People v. Hines, supra*, 58 Cal.App.4th at p. 608.)

While we believe no ambiguity exists, the legislative history of section 1370.01 buttresses our interpretation. Newly-amended section 1370.01 was enacted through Senate Bill 317 (2021-2022 Reg. Sess.), to compliment, in part, the mental health diversion statute in section 1001.36. Our review of the legislative history reveals the author, Sen. Stern, sought to provide trial courts with "alternative options," using a "tailored approach" with "existing tools," to avoid a cycle of incarceration by creating a treatment

pathway. (Assemb. Comm. On Public Safety, Analysis of Sen. Bill No. 317 (2021-2022 Reg. Sess.) June 29, 2021, pp. 6-7.) Notably, and of paramount concern to the author, was (1) the elimination of custodial referrals for misdemeanor defendants found incompetent to stand trial, and (2) the prevention of delays in treatment. (*Id.* at pp. 9-10.)

We believe petitioner's interpretation of a qualified mental health expert is contrary to the statute's legislative intent because it requires a treatment court to go outside "existing tools" to find and appoint a "qualified mental health expert," after incompetency has already been determined based on the opinion of a "psychiatrist, licensed psychologist, or any other expert the court [has deemed] appropriate." (Pen. Code, § 1369, subd. (a).) Designated mental-health treatment courts are often staffed with mental-health justice partners, such as Rosen, who are the "existing tools" relied upon by the court. Allowing an LMFT, like Rosen, to opine about grave disability under section 1370.01 uses "existing tools" to "avoid a cycle of incarceration." We also note that using "existing tools," like Rosen, whom are immediately at the treatment court's disposal, prevents unnecessary court delays in incompetency matters.

Petitioner asserts the treatment court's reasoning about why an LMFT is qualified to render an opinion on grave disability – the ability to make an application under Welfare and Institutions Code section 5150 – is flawed, because many unlicensed individuals are also qualified to make this application. Thus, according to petitioner, the court's flawed reasoning would mean that peace officers could also make grave disability determinations. However,

we review judicial action, not judicial reasoning.  Thus, if a trial court reaches the correct result, albeit for erroneous reasons, its decision will be affirmed.  (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 981.)  We believe the trial court's action was correct.

Petitioner claims it requires "a clinical opinion" of grave disability from a qualified mental health expert, because it does not have the ability to do so itself.  But, nothing prevents petitioner from seeking "a clinical opinion," if it desires one.  We believe that Rosen's opinion about Luna's grave disability, whether "clinical" or not, suffices for the *referral* for a conservatorship investigation.  At oral argument, petitioner asserted it had previously relied on custodial clinician reports from treatment facilities to commence their investigation, under former section 1370.01.  Nevertheless, we do not question the wisdom of the Legislature, where it sought to eliminate referrals for incompetent misdemeanants to custodial treatment settings.

Finally, petitioner asserts that assuming arguendo, Rosen is qualified to render an opinion on grave disability under section 1370.01, her opinion is nonetheless flawed because her evaluation was not done face-to-face with Luna.  According to petitioner, the treatment court's minute order does not reflect "a personal evaluation" of Luna.  The record is silent on this point.  Put otherwise, petitioner's assertion of a lack of a personal evaluation is not supported in the record.  It was incumbent on petitioner to support this assertion to carry its burden of showing error in the record.  (*In re Kathy P.* (1979) 25 Cal.3d 91, 102.)  This was not done.  Accordingly, we reject this claim.

//

## III.

## <u>DISPOSITION</u>

The stay is lifted and the peremptory writ is discharged.

IT IS SO ORDERED.

Dated this 5th day of May, 2022.

 

 

_____
Hon. F. Brian Alvarez
Presiding Judge of the Appellate
Division of the Fresno Superior
Court

 

 

_____
Hon. D. Tyler Tharpe
Assistant Presiding Judge of the
Appellate Division of the Fresno
Superior Court

 

 

_____
Hon. Kristi Culver Kapetan
Judge of the Appellate Division of
the Fresno Superior Court